IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHELLE BARNETT, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. CCB-11-CV-00122 |
| | * | |
| MARY BETH PERRY, *et al.* | * | |
| | * | |
| Defendants. | * | |

******

# MEMORANDUM

On January 14, 2011, plaintiffs Michelle Barnett, Adam J. Barnett, Trinity Barnett, and Billy R. Barnett filed a three-count complaint against three parties: Michelle's former employer, Jones Junction, Inc. ("Jones Junction"); Jones Junction's director of employee benefits, Mary Beth Perry; and Kanawha Healthcare Solutions, Inc. ("Kanawha"), the third-party claims administrator for Jones Junction's health insurance plan. [ECF No. 1]. The Barnetts filed a first amended complaint on March 7, 2011. [ECF No. 3]. The Barnetts claim that Jones Junction, Perry, and Kanawha violated state and federal law when Michelle was fired from her position at Jones Junction, a car dealership. Specifically, the Barnetts claim that the defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, failed to properly notify the Barnetts of their rights to continuing health coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq.*, and failed to pay Michelle her final paycheck and commission check pursuant to the Maryland Wage Payment and Collection Law, Md. Lab. & Employ. Code Ann. §§ 3-504 *et seq.*

On March 28, Jones Junction and Perry filed a motion to dismiss or, in the alternative, for summary judgment. [ECF 4]. On May 12, the Barnetts filed a motion for leave to file a second

1

amended complaint.¹ [ECF 9]. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the pending motion for summary judgment will be granted in part and denied in part. The motion to dismiss Perry as a defendant will be granted. The Barnetts' motion for leave to file a second amended complaint will be granted in part and denied in part, and the Barnetts will be permitted to file a corrected version of Michelle's affidavit.

**I. Factual Background**

Many of the facts in this case are undisputed. Michelle began working at the Jones Junction auto dealership in 2009. Am. Compl. ¶1. She was paid $1,000 every two weeks and also received commission payments based on the number of service sales she finalized each month. Id. at 17-18. As a Jones Junction employee, she also participated in the health insurance plan ("the Plan") that the car dealership offered. Am. Compl. ¶1. The Plan also covered Adam, Trinity, and Billy Barnett – Michelle's husband, daughter, and son. Am. Compl. ¶2-3. The Plan is governed by both the federal Employee Retirement Income Security Act of 1974 ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), an amendment to ERISA. Am. Compl. ¶¶ 41-45, 54-55; Defs.' Mot. to Dismiss or for Summ. J., Ex. 1A. Prior to November 19, 2009, Jones Junction took Michelle's health insurance contributions out of her paycheck. Michelle Barnett Aff. ¶3.

Michelle suffered a back injury and stopped working at Jones Junction on November 19, 2009. Am. Compl. ¶8. She has not received either wage or commission payments from Jones

---

¹ Although the court considered the Barnetts' proposed changes to the amended complaint while evaluating the merits of the dispositive motions, allowing further amendment to moot the pending dispositive motions would result in significant delay. Moreover, as discussed herein, the proposed amendments would not alter this court's analysis on the dispositive motion. For those reasons, both the Barnetts' motion for leave to file a second amended complaint and Jones Junction's and Perry's motion for summary judgment are decided within this memorandum.

2

Junction since the date of her injury. Id. ¶¶ 34-35. On January 7, 2010, Michelle underwent back surgery; through March 1, 2010, she had physical therapy to assist her recovery. Id. ¶¶ 21-22. Michelle's medical treatment was initially approved as medically necessary. Id. ¶ 23. On or about February 23, 2010, Michelle received a letter sent by Mary Beth Perry on behalf of Jones Junction. Id. ¶ 24. The February 23 letter advised Michelle that she owed health insurance contributions for the period November 27, 2009 through February 19, 2010. Id.; Michelle Barnett Aff., Attach. D. The February 23 letter stated that the Barnetts' insurance coverage would be terminated if Jones Junction did not receive payment in full by March 1, 2010. Am. Compl. ¶ 24. On or about February 26, 2010, Michelle received another letter from Perry, which stated that Michelle's employment with Jones Junction would be terminated as of March 1, 2010 due to her inability to return to work. Am. Compl. Ex. 1. After Michelle's employment was terminated, Jones Junction also retroactively cancelled the Barnetts' health insurance as of December 26, 2009 because payment in full had not been made. Am. Compl. ¶¶ 13-15. As a result of the cancellation of their health insurance, the Barnetts are faced with extensive medical bills for which they are solely responsible. Am. Compl. ¶ 19.

Kanawha sent an initial COBRA notice to the Barnetts on March 9, 2010, and sent a revised COBRA notice on March 23, 2010. Pls.' Mot. for Leave to File Second Am. Compl., Ex. 2, 3. The Barnetts received both of these notices. See id. The initial COBRA notice stated that Michelle had been involuntarily terminated on March 1, 2010 and required that she elect continuing health coverage by May 7, 2010. Pls.' Mot. Ex. 2. The revised notice stated that Michelle had been involuntarily terminated on December 26, 2009 and required that she elect continuing health coverage by May 21, 2010. Pls.' Mot. Ex. 3. Despite the termination date included in the revised COBRA notice, the parties agree that Jones Junction terminated

3

Michelle's employment on March 1, 2010. Defs.' Mot. 7. The parties also agree that Jones Junction is a Plan administrator for the company's group health insurance plan. Jones Junction is listed as the Plan administrator and sponsor in the Plan summary.[2] Defs.' Mot. Ex. 1A at 76.

## II. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

### A. Standard of Review

#### 1. Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir.1997). However, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. See, e.g., Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir.2001) (noting that the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions).

#### 2. Motion for Summary Judgment

Under Rule 12(b)(6), a motion to dismiss should be treated as a motion for summary judgment when the motion to dismiss, or the exhibits in the record, present matters outside the nonmoving party's pleadings and the court does not exclude such matters. Fed.R.Civ.P. 12(b)(6). Because the court must look beyond the four corners of the complaint in deciding this motion, Jones Junction's and Perry's pending motion will be treated as a motion for summary judgment.

---

[2] The Barnetts also assert that Perry is a Plan administrator, an assertion the defendants deny.

The court need not provide the parties with express notice of the conversion when, as here, the motion to dismiss has been alternately framed as a motion for summary judgment and the nonmoving party has submitted additional evidence outside the pleadings. Butterbaugh v. Chertoff, 479 F.Supp.2d 485, 490 (W.D.Pa.2007).

> Under the December 10, 2010 revisions to Fed.R.Civ.P. 56(a):
>
> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir.2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir.1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 240 (4th Cir.1988).

5

## B. Analysis

The amended complaint contains three counts, which the court will address individually.

### 1. Count II – ERISA Breach of Fiduciary Duty Claim

Count II of the amended complaint alleges that defendants Jones Junction and Perry are Plan fiduciaries and that they breached their fiduciary duties under ERISA. The Barnetts claim that these defendants breached their fiduciary duties under ERISA by (1) not sending or using Michelle's premium payments; (2) advising Kanawha to retroactively change the Barnetts' health insurance coverage dates; (3) advising Kanawha to double-bill Michelle for health insurance coverage from December 27, 2009 to March 1, 2010; and (4) failing to timely advise the Barnetts of their rights under COBRA. Am. Compl. ¶¶ 26-30. The Barnetts seek reinstatement to Jones Junction's health insurance plan and reimbursement for all damages and losses they sustained. Id. ¶¶ 56. Jones Junction and Perry respond that the Barnetts' claim is a claim for benefits under a plan governed by ERISA, not a claim for breach of fiduciary duty under ERISA. Defs.' Reply in Support of Mot. to Dismiss or for Summ. J. 2-3. Jones Junction and Perry further contend that the Barnetts' ERISA benefits claim is precluded because they failed to exhaust the administrative remedies available under the Plan before filing this lawsuit.

> ERISA provides that
>
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (2010). Any recovery on an ERISA breach of fiduciary duty claim must inure to the benefit of the plan as a whole. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140-44 (1985) (noting that ERISA provides a cause of action for breach of fiduciary

duty in order to address the concern of "misuse and mismanagement of plan assets by plan administrators"); Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir. 1999). As another district court within the Fourth Circuit put it, "to advance a claim of breach of fiduciary duty pursuant to § 502(1)(2) of ERISA, the plaintiff must assert recovery for the employee benefit plan as a whole, as opposed to individual relief." Suntrust Bank v. Aetna Life Ins. Co., 251 F.Supp.2d 1282, 1290 (E.D.Va. 2003) (dismissing a purported ERISA breach of fiduciary duty claim that did not seek to benefit the employee benefit plan as a whole).

Courts draw an important procedural distinction between ERISA breach of fiduciary duty claims and ERISA benefits claims. Plaintiffs need not always exhaust administrative avenues when their claims relate to breach of fiduciary duty under ERISA, but "an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits . . . ." Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989). The Fourth Circuit

> require[s] a plaintiff to exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits. Under those circumstances, it is clear that such a claim is a naked attempt to circumvent the exhaustion requirement.

Smith, 184 F.3d at 362.

In this circuit, "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*." Id. (emphasis in original) (valid ERISA breach of fiduciary duty claim where the plaintiff contended that defendants' actions lowered the value of all beneficiaries' 401(k) accounts). This rule avoids artful pleadings

7

that recharacterize the denial of benefits as breach of fiduciary duty. See Coyne v. Delany Co., 102 F.3d 712, 714 (4th Cir. 1996).

The Barnetts' purported ERISA breach of fiduciary duty claim does not address the issue of misuse and mismanagement of Plan funds by plan administrators. This court need not evaluate and interpret ERISA in order to determine whether Perry's and Jones Junction's alleged actions are wrongful. To determine whether these defendants' actions create liability, the court would instead interpret and apply the terms of the Plan itself, including its termination and continuing coverage provisions. The Barnetts' claim is, therefore, precisely the sort of claim that is properly construed as a benefits claim rather than as a breach of fiduciary duty claim. See Smith, 184 F.3d at 362. This conclusion is further reinforced by an examination of the remedies the Barnetts seek. Those remedies – retroactive reinstatement to the Plan and reimbursement for their costs – would benefit only the Barnetts, not the Plan's beneficiaries as a whole. For all these reasons, the Barnetts' ERISA breach of fiduciary duty claim is actually a claim for ERISA benefits.

As noted above, in the Fourth Circuit plaintiffs are routinely required to exhaust their administrative remedies before seeking relief from federal court.[3] The Barnetts have not alleged that they sought administrative relief before filing this suit, and the record does not reflect pursuit of any such relief. The deadline by which the Barnetts were required to pursue those

---

[3] The Barnetts rely on Davis v. Featherstone, 97 F.3d 734 (4th Cir. 1996) for the proposition that they need not exhaust their administrative remedies before filing an ERISA claim in this Court. That reliance is misplaced. In Davis, a former employee of Baltimore Gas & Electric Company ("BGE") sought disability benefits from BGE after he suffered a work-related injury and was discharged. BGE's disability policy required that an employee exhaust all other benefits provided by the company pursuant to company benefit plans before seeking disability benefits. The Davis court noted that "[b]ecause the company discharged [plaintiff] nine days after he was injured, he is no longer an employee entitled to benefits." 97 F.3d at 737. The court held that "it would be futile for [plaintiff] to attempt to exhaust his benefits [under other BGE benefit plans], as the company would not provide them." Id. The Davis case dealt with the exhaustion of employer-provided benefits prior to seeking disability benefits. The case is not relevant to the issue of exhausting administrative remedies before filing an ERISA benefits claim in federal court. This distinction should be particularly evident to the Barnetts' counsel, who represented the plaintiff in Davis. 97 F.3d at 735.

administrative remedies is now past.[4] Because the Barnetts' ERISA claim is a claim for ERISA benefits and because the Barnetts have failed to first seek any administrative remedies under the terms of the Plan, Jones Junction's and Perry's motion for summary judgment on Count II of the amended complaint will be granted.

### 2. Count I – COBRA Claim

The Barnetts contend that the COBRA notices sent by the defendants to Michelle misrepresented Michelle's employment termination date and were untimely. Am. Compl. ¶¶ 10-14, 45-51. The Barnetts argue that the defendants should have sent COBRA notifications after two different qualifying life events: (1) the date that Michelle stopped work, November 19, 2009; and (2) the date Jones Junction terminated Michelle's employment, March 1, 2010. Pls.' Resp. to Defs.' Mot. to Dismiss 5. Jones Junction and Perry respond that they properly notified the Barnetts of their COBRA rights through the March 23, 2010 COBRA notice sent to Michelle. Defs.' Reply 7. The defendants further contend that Michelle stopping work was not a qualifying life event for which the defendants should have sent a COBRA notice. Id.

COBRA requires the sponsor of a group health plan to provide each qualified beneficiary an option to continue health plan coverage when that employee would otherwise lose coverage as a result of a "qualifying event." 29 U.S.C. § 1161 (2010).

> [T]he term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under [COBRA], would result in the loss of coverage of a qualified beneficiary:

---

[4] The Plan provides that:
   The Claimant must file an appeal of an adverse benefit determination within 180 days following the Claimant's receipt of the notification of adverse benefit determination, except that to appeal a decision by the Plan to reduce or terminate an initially-approved course of treatment . . . the Claimant must submit an appeal within thirty (30) days of the Claimant's receipt of the notification of the Plan's decision to reduce or terminate.
Defs.' Mot. Ex. 1A at 58. The Barnetts filed the initial complaint in this case more than 180 days after they received notice of the termination of their health coverage and more than 30 days after they received notice that Michelle's surgery and physical therapy bills would not be covered by the Plan.

> . . . The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

29 U.S.C. § 1166(a)(2). In order to determine the occurrence of a qualifying event, "a loss of coverage need not occur immediately after the [qualifying] event, so long as the loss of coverage occurs before the end of the maximum coverage period." Treas. Reg. § 54.4980B-4(c) (2011). An employer has a total of forty-four days to notify an employee of his or her COBRA rights if the employer is also the plan administrator. 29 C.F.R. § 2590.606-4(b) (2011).

Michelle's employment was terminated on March 1, 2010, and she received two COBRA notifications well within forty-four days of her termination. Both notices provided several weeks for the Barnetts to elect continuing health coverage. Both notices also contained the phone number and address for Kanawha customer service, in case the Barnetts had questions about the COBRA notice or their health coverage options. The Barnetts had ample time to elect COBRA coverage after March 1, 2010; they also had ample time to seek clarification of Michelle's listed termination date in the revised notice they received. For these reasons, the court finds that the Barnetts received appropriate COBRA notification after the March 1, 2010 qualifying life event.

The remaining issue is whether the defendants had an obligation to provide the Barnetts with COBRA notification after November 19, 2009, the date that Michelle stopped working for Jones Junction. It is clear that Michelle's work hours were reduced to zero after November 19, 2009. The question is whether this reduction of hours would have resulted in the Barnetts' loss of health insurance coverage, but for the availability of continuing coverage under COBRA. The Barnetts rely on <u>Aquilino v. Solid Waste Servs., Inc.</u>, 2008 U.S. Dist. LEXIS 47168 (E.D.Pa. June 13, 2008), in which the court found that a change in the manner by which an employee must contribute to his or her health care plan, when triggered by a reduction of work hours, qualifies as a loss of coverage for COBRA purposes. Jones Junction and Perry claim that the Barnetts'

health coverage continued after November 19, 2009, to the extent that the Barnetts continued to pay premiums. Jones Junction and Perry argue that the Barnetts' health insurance coverage was cancelled because the Barnetts stopped contributing to the plan, and that failure to pay is not a qualifying life event that triggers COBRA notification.[5]

Viewing these facts in the light most favorable to the Barnetts, it is possible the court could find that a qualifying life event occurred on November 19, 2009. Whether the COBRA notification requirement was triggered will require determination of whether Michelle's reduction in work hours caused her loss of health care coverage under the Plan. This question requires interpretation of the Plan's termination provisions, as well as additional factual findings regarding whether Michelle maintained active employment after November 19, 2009.

Accordingly, the summary judgment motion advanced by Jones Junction and Perry will be denied as to Count I of the amended complaint.

### 3. Maryland Wage & Payment Collection Law Claim

Count III alleges that Jones Junction failed to pay Michelle her final paycheck and commission check as required by the Maryland Wage Payment and Collection Law ("MWPCL"). The parties dispute the facts surrounding the MWPCL claim. Michelle and Mary Beth Perry have filed affidavits in support of their respective positions. See Defs.' Mot. Ex. 1;

---

[5] The Plan states, in relevant part, that employee health coverage terminates on the earliest of the following dates:
> . . .
> (2) The date the covered Employee ceases to be in one of the eligible classes. This includes death or termination of Active Employment of the covered Employee. (Continuation Coverage Rights under COBRA should be consulted.)
> . . .
> (4) The date the Employee ceases to meet the Active Employment requirements. (An extension of coverage may be available during an approved leave of absence according to the FMLA and/or the Employer's leave policies.)
> . . .
> (6) The end of the period for which the required contribution has been paid if the charge for the next period is not paid when due. . . .

Defs.' Mot. Ex. 1A at 12. An "Active Employee" is "an Employee who is on the payroll of the Employer and who has begun to perform the duties of his or her job with the Employer on a full-time basis." Id. at 36.

Pls.' Oppn. Ex. 1. These affidavits contain conflicting reports regarding the amount of money owed to Michelle after she stopped working on November 19, 2009, the communications between Michelle and Mary Beth Perry, and the application of Michelle's owed wages to past-due health insurance premiums. Jones Junction and Perry also argue that Michelle's affidavit should be stricken for failure to comply with Rule 56(c)(4)'s personal knowledge requirement.

Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ." Statements made "on information and belief" are insufficient to establish a material fact. See Automatic Radio Mfg. Co. v. Hazeltine Res., Inc., 339 U.S. 827, 831 (1950) (overruled on other grounds, Lear, Inc. v. Adkins, 395 U.S. 653 (1969)); Ambling Mgmt. Co. v. Univ. View Partners, LLC, 581 F.Supp.2d 706, 720 (D.Md. 2008)). Courts have discretion when determining whether to strike an affidavit submitted in support of, or in opposition to, a summary judgment motion. See, e.g., Evans v. Technology Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

While the introduction to Michelle's affidavit states that she has personal knowledge of the facts contained therein, the affidavit's attestation states that "all of the information contained in this Affidavit is true and correct to the best of [the signer's] knowledge, information, and belief." Pls.' Oppn. Ex. 1. It is unclear what statements in Michelle's affidavit are based upon personal knowledge and what statements are based upon information and belief. To the extent that it is based upon information and belief, Michelle's affidavit may run afoul of Rule 56. Furthermore, Michelle's statement that she has personal knowledge of the facts contained within her affidavit directly conflicts with the language of the affidavit's attestation. So that Michelle's affidavit comports with Rule 56, the court will permit the Barnetts to submit a revised affidavit

that (1) contains only facts of which Michelle has personal knowledge; and (2) properly attests to her personal knowledge of those facts. If the contents of Michelle's affidavit are, in fact, based upon personal knowledge, then the parties dispute facts that are material to the determination of the viability of Count III. Summary judgment on this issue is, therefore, improper at this time.[6]

### III. Defendants' Motion to Dismiss Mary Beth Perry

As part of their dispositive motion, Defendants Jones Junction and Perry request that Perry be dismissed as a defendant in this case. Jones Junction and Perry argue that Perry is not a proper defendant in this case because she is neither a Plan administrator nor a Plan fiduciary for purposes of the Barnetts' ERISA claim. Defs.' Mot. 7-8.

This court has already determined that summary judgment will be entered for the defendants as to the Barnetts' ERISA claim. The Barnetts' MWPCL claim, Count III of the amended complaint, does not implicate Perry. The only remaining question is whether Perry is a proper defendant with respect to the Barnetts' COBRA claim, Count I of the amended complaint.

Count I of the amended complaint does not specifically mention Perry, though it does allege that the "Defendants" violated COBRA's notice requirements. Am. Compl. ¶ 51. Federal law requires that *plan administrators* notify plan beneficiaries of their COBRA rights when qualifying events occur. 29 U.S.C. § 1166(a)(4) (emphasis added). The Barnetts assert that Perry was an administrator for the Plan, despite the fact that Jones Junction alone is listed as the Plan administrator in the Plan summary. Am. Compl. ¶ 5, 21; Defs.' Mot. Ex. 1A at 76. Perry has also filed an affidavit averring that she is not a Plan administrator. Defs.' Mot. Ex. 1.

Beyond the single conclusory statement included in the amended complaint, the Barnetts fail to show that Perry is a Plan administrator. The amended complaint and the Barnetts' other

---

[6] If Michelle's corrected affidavit is identical in substance to her current affidavit, summary judgment will remain improper because material facts will continue to be disputed.

13

filings assert that Perry is a Plan fiduciary (for purposes of the ERISA claim) but do not allege facts that, if true, would show that Perry is a Plan administrator. The unsupported allegations of the amended complaint are not enough to trump Perry's sworn statement and the text of the Plan summary.

The Barnetts have failed to properly plead that Perry is a Plan administrator subject to the notification requirements of COBRA. Accordingly, and because Perry is not implicated in the remaining claims of the amended complaint, the claims against her will be dismissed.[7]

**IV. Plaintiffs' Motion for Leave to File Second Amended Complaint**

The Barnetts have also moved for leave to file a second amended complaint. [ECF No. 8]. When a plaintiff seeks to amend a complaint before trial, the court "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a). A court should deny a motion to amend *"only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir.2001) (internal quotation marks and citation omitted, emphasis in original); see Foman v. Davis, 371 U.S. 178, 182 (1962).

The motion will be granted in part with respect to Counts I and III, in keeping with Rule 15(a). However, the motion will be denied with respect to Count II in its entirety and with respect to Counts I and III vis-à-vis defendant Perry. The court has already determined that Perry should be dismissed from the complaint entirely and that summary judgment should be

---

[7] The Barnetts have filed a motion for leave to file a second amended complaint, which they describe as, among other things, "setting forth further their factual allegations against Defendant Perry concerning why she is a fiduciary under ERISA and that Count II is a claim that may be brought against both Defendants Perry and Jones Junction Inc. because both were acting in a fiduciary capacity." Pls.' Mot. for Leave to File Second Am. Compl. ¶ 3. Even when the court considers the additional allegations contained in the proposed second amended complaint, the Barnetts fail to demonstrate that Perry is a Plan administrator who could be subject to the notification requirements of COBRA.

granted in favor of Jones Junction on Count II. The changes that the Barnetts propose in their draft second amended complaint do not affect the court's analysis on these matters.

## V. Conclusion

Based on the foregoing, the court will grant the motion to dismiss Mary Beth Perry as a defendant in this case. Further, the court will grant Jones Junction's and Perry's motion for summary judgment as to Count II of the amended complaint and deny the summary judgment motion as to Counts I and III of the amended complaint. The court will grant the Barnetts' motion for leave to file a second amended complaint as to Counts I and III of the amended complaint, but will deny as futile the Barnetts' motion to file a second amended complaint as to Count II. Finally, the court will permit the Barnetts to submit a corrected version of Michelle Barnett's affidavit that is limited to facts of which Michelle Barnett has personal knowledge and which contains a proper attestation. A separate order follows.

Dated: <u>November 16, 2011</u>             _____/s/_____
                                                                                           Catherine C. Blake
                                                                                           United States District Judge